AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California



FILED
AUG 14 2019
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>One iPhone cellular phone<br>Model number: MT472<br>IMEI: 35306/41/0281043/8 | Case No. **19MJ3425** |

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952 and 960 | Unlawful Importation of a Controlled Substance |

The application is based on these facts:

See attached Affidavit of Special Agent Eric Wilson, Homeland Security Investigations

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Eric Wilson, Homeland Security Investigation
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/14/19

_____
*Judge's signature*

City and state: San Diego, CA

Hon. Allison H. Goddard, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The property to be search in connection with an investigation of violations of Title 21, United States Code, Sections 952 and 960 is described below:

> iPhone cellular phone
> Model number: MT472
> IMEI: 35306/41/0281043/8

**("TARGET TELEPHONE")**

**TARGET TELEPHONE** is currently in the possession of the Department of Homeland Security, U.S. Customs and Border Protection, 9495 Customhouse Plaza, San Diego, CA 92154.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, beginning from March 1, 2019, up to and including June 7, 2019:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence tending to indicate efforts to import controlled substances from Mexico to the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in smuggling-controlled substances from Mexico to the United States;

d. tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as, but not limited to, stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject phone; or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

**which are evidence of violations of Title 21, United States Code, Sections 952 and 960.**

## AFFIDAVIT

I, Special Agent Eric Wilson, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by Department of Homeland Security, Homeland Security Investigations for the following target property: a cellular telephone seized on June 7, 2019, from Carlos Eduardo HUERTA-Palacios at the Otay Mesa, California Port of Entry. The cellular telephone is an iPhone with IMEI# 353064102810438 (the "TARGET TELEPHONE"). The TARGET TELEPHONE was seized from HUERTA, when he entered the United States from Mexico at the Otay Mesa, California Port of Entry driving a 2002 Ford Explorer concealing approximately 9.24 kilograms (20.37 pounds) of methamphetamine and approximately 1.08 kilograms (2.38 pounds) of heroin. I believe that the TARGET TELEPHONE was used by HUERTA during a drug smuggling event on June 7, 2019. He has been charged with importation of a controlled substance (methamphetamine and heroin) in violation of Title 21, United States Code sections 952 and 960 in the Southern District of California in case number 19-CR-02535-BAS.

2. Probable cause exists to believe that the TARGET TELEPHONE contains evidence relating to violations of Title 21, United States Code Sections 952 and 960 (Importation of a Controlled Substance). The TARGET TELEPHONE is currently in the possession of the Department of Homeland Security, U.S. Customs and Border Protection, 9495 Customhouse Plaza, San Diego, CA 92154 (Seized Property Vault).

3. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe the items to be seized set forth in Attachment B will be found in the item to be searched as described in Attachment A. These items may be or lead to: (1) evidence of the existence of drug trafficking in violation of Title 21, United States Code Sections 952 and 960, and (2) property designed or intended for use, or which is or has been used as a means of, committing criminal offenses.

## TRAINING AND EXPERIENCE

4. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I have been a Special Agent ("SA") with Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), since December 2018. I am assigned to a Contraband Smuggling group in San Ysidro, CA, that focuses on contraband smuggling and the importation of controlled substances on the Southwest Border. I am cross-designated and have the authority to conduct Title 21 investigations and enforcement activities. I have been involved with investigations for Title 21 offenses, working closely with other agencies, including the U.S. Drug Enforcement Administration and multiple state and local agencies.

5. As a federal law enforcement officer for over 7 years, I have received formal training, as well as extensive on-the-job training, relating to the investigation of narcotics trafficking, bulk cash smuggling, and techniques used for contraband smuggling. I have investigated drug trafficking and other crimes that have resulted in arrests, indictments, and convictions. While participating in these and other criminal investigations, I have executed search warrants on residences, vehicles and electronic media, such as cell phones. As a result of these investigations, I have become familiar with methods and techniques used by narcotics traffickers to import narcotics into the U.S. and distribute those narcotics within the United States.

6. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

7. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in controlled substance smuggling

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

2

investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, WhatsApp and other texting applications, the internet, video, social networking sites, and voice messages;

   b. Drug smugglers will use WhatsApp and other encrypted texting applications on cellular telephones to communicate because they believe that these services insulate their communications from law enforcement;

   c. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

   d. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

   e. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

   f. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity including the presence and location of marked and unmarked units, as well as the operational status of Border Patrol checkpoints; and

   g. Drug smugglers will use cellular telephones to communicate with each other regarding payment and other financial arrangements relating to the transportation of their illegal cargo.

8. Based upon my training and experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from

various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular telephones yield evidence:

a. tending to identify attempts to import methamphetamine, heroin, or some other controlled substance from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine, heroin, or some other controlled substance from Mexico into the United States;

c. tending to identify payment, payment methods, or other monetary transactions relating to importing controlled substances from Mexico to the United States;

d. tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled substance from Mexico into the United States;

e. relating to the purchase of vehicles to import methamphetamine, heroin, or some other controlled substance from Mexico into the United States;

f. tending to identify travel to or presence at locations involved in the smuggling of methamphetamine, heroin, or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

g. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

h. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

9. Based upon my training and experience, I am familiar with the ways in which drug traffickers conduct their business, including the various means and methods by which drug traffickers import and distribute drugs; use cellular telephones, emails, and text messages to facilitate drug activity. I am also familiar with the ways in which drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, without limitation, the use of couriers to transport currency and proceeds, the use of third parties and nominees to purchase or to hold title to assets, the use of multiple vehicles as conveyances for drugs and drug proceeds, and the installation of false/hidden compartments ("traps") in those vehicles to covertly transport drugs and drug proceeds.

10. I also know from training and experience that drug traffickers periodically change or "drop" their telephones and/or telephone numbers in an attempt to avoid law enforcement interception of their conversations. Moreover, it is my experience that narcotics distributors purposefully use multiple communication devices (for example, cellular telephones) to keep law enforcement from understanding the full scope of their own and/or their organization's illicit conduct, in the event that their communications are being intercepted. I also know that drug traffickers frequently use text messaging to communicate with other traffickers in an effort to thwart law enforcement interception of communications.

11. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distributional quantities of hard narcotics, such as methamphetamine and heroin. Typically, couriers smuggling controlled substances across the border are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance. Narcotics smugglers and their organizations use cellular and digital telephones, in part, because these individuals

1   believe law enforcement is unable to track the originating and destination phone numbers of
2   calls placed to and from cellular and digital telephones.

3       12.    Subscriber Identity Module (SIM) Cards also known as subscriber identity
4   modules are smart cards that store data for GSM cellular telephone subscribers. Such data
5   includes user identity, location and phone number, network authorization data, personal
6   security keys, contact lists and stored text messages. Much of the evidence generated by a
7   smuggler's use of a cellular telephone would likely be stored on any SIM Card that has
8   been utilized in connection with that telephone.

## FACTS SUPPORTING PROBABLE CAUSE

10      13.    On June 7, 2019, at approximately 10:40 a.m., HUERTA, a citizen of Mexico,
11  applied for entry into the United States from Mexico through the Otay Mesa, California,
12  Port of Entry ("POE") in vehicle lane seven. HUERTA was the driver, registered owner
13  and sole occupant of a brown 2002 Ford Explorer bearing a Mexico license plate (the
14  "Vehicle"). A U.S. Customs and Border Protection ("CBP") Officer conducted an
15  inspection of HUERTA and the Vehicle. HUERTA told the officer he was the registered
16  owner of the Vehicle and he was traveling to Chula Vista, CA to visit a friend. HUERTA
17  also gave two separate negative Customs Declarations. During the encounter, the CBP
18  Officer observed that HUERTA's hands were shaking and HUERTA was avoiding eye
19  contact. A CBP Canine Enforcement Officer ("CEO") was requested. The CEO responded
20  and conducted a canine sniff of the Vehicle utilizing his assigned Narcotics and Human
21  Detection Dog ("NHDD"). The CEO observed his NHDD alert to the trained odor
22  emanating from the Vehicle. After the alert, the CEO requested the Vehicle keys from
23  HUERTA. The CEO noted HUERTA's hands were visibly shaking when HUERTA
24  handed the CEO the keys. A CBP Officer inspected the Vehicle and observed clear plastic
25  wrapped packages hidden inside the air ventilation system. The CBP Officer referred the
26  Vehicle for secondary inspection.

27      14.    In secondary inspection, the Vehicle was thoroughly searched and CBP

1  Officers found approximately eighteen packages of a crystal-like substance with a total weight of approximately 9.24 (20.37 pounds). The substance was inspected and preliminarily tested positive for methamphetamine. CBP Officers also found approximately one (1) package containing a dark, hard substance with a total weight of 1.08 kilograms (2.38 pounds). The substance was inspected and preliminarily tested positive for heroin. These packages were found inside the dashboard area of the Vehicle.

15. Officers placed HUERTA under arrest for violating Title 21, United States Code, Sections 952 and 960, Unlawful Importation of a Controlled Substance. TARGET TELEPHONE was seized from HUERTA upon his arrest.

16. HUERTA waived his *Miranda* rights and elected to make a statement. HUERTA stated he was recruited off Facebook to work for a company called TRENDencias, MX in approximately March 2019. HUERTA stated he was given the brown 2002 Ford Explorer and approximately $2000, and told to register the Vehicle in his name. HUERTA stated he used the Vehicle to cross the border and meet a client at a Starbucks in Chula Vista, CA. HUERTA stated a female would come and take the Vehicle "to run errands" for approximately three hours. HUERTA stated that the female would return the Vehicle back to him and he would drive it back into Mexico. HUERTA stated he did this every Friday for approximately the last month before his arrest. HUERTA stated that all communication about his employment was coordinated through his phone with his boss in Mexico. HUERTA stated he thought it was weird and had a feeling something was not right but denied knowledge of the drugs.

17. HUERTA requested to see his phone during this interview, and the TARGET TELPHONE was brought into the interview room. HUERTA said that he had WhatsApp conversations with at least one of the individuals with whom he worked at TRENDencias on his phone. HUERTA also stated that he had Facebook Messenger messages with the recruiter for TRENDencias and email conversations with the woman who picked up his vehicle in the United States to "run errands." At the end of the interview, HUERTA was

1 allowed to use the TARGET TELEPHONE to call his mother.

2     18. Based upon my experience investigating narcotics traffickers and the particular investigation in this case, I believe that HUERTA likely used the TARGET TELEPHONE to coordinate the importation of federally controlled substances into the United States. In addition, I believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information may be stored in the memory of the TARGET TELEPHONE, which may identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of HUERTA, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the TARGET TELEPHONE.

    19. Finally, I also know that narcotics trafficking activities entail intricate planning to successfully evade detection by law enforcement. In my professional training, education and experience, I have learned that this requires planning and coordination in the days, weeks, and often months prior to the event. Given this, as well as the information provided during HUERTA's post-arrest statement, including that he began working for TRENDencias in March of 2019, I request permission to search the TARGET TELEPHONE for items listed in Attachment B beginning on March 1, 2019, up to and including his arrest date of June 7, 2019.

## METHODOLOGY

    20. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile

AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

8

devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, I will collect the TARGET TELEPHONE and subject it to analysis. All forensic analysis of the data contained within the TARGET TELEPHONE and memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

23. Based on all of the facts and circumstances described above, there is probable

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

9

1 cause to believe that HUERTA used the TARGET TELEPHONE to facilitate the offenses of importing methamphetamine and heroin. The TARGET TELEPHONE was likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence and instrumentalities of violations of Title 21, United States Code, Sections 952 and 960.

24. There is also probable cause to believe that evidence and instrumentalities of illegal activity committed by HUERTA continues to exist on the TARGET TELEPHONE.

25. Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachment B are likely to be found in the property to be searched described in Attachment A. Therefore, I respectfully request that the Court issue a warrant authorizing me or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

ERIC WILSON
HSI Special Agent

Subscribed and sworn to before me this 14 day of August, 2019.

HON. ALLISON H. GODDARD
United States Magistrate Judge